CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

NEAL C. HONG (ILBN 6309265)
Assistant United States Attorney

60 S. Market, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5081
neal.hong@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 22-CR-00315 EJD |
| Plaintiff, | THE UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| RUBEN ADOLFO PIMENTEL, | |
| Defendant. | |

## INTRODUCTION

After considering the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully recommends that the Court sentence Defendant, Ruben Adolfo Pimentel, to time served.

## BACKGROUND

On March 10, 2021, a law enforcement confidential informant (CI) met with Defendant in front of Defendant's residence in Salinas, CA. PSR 13. Prior to this day, Defendant had arranged to have CI meet with a firearms source. PSR 11-12. While waiting for the firearms source, Defendant sold CI approximately 53.6 grams of pure methamphetamine for $600. PSR 13, 17.

CI left the area and returned later that day. PSR 14. Defendant and the firearms source, got into CI's vehicle. PSR 15. Inside the vehicle, the firearms source sold CI a pistol and ammunition for $1,300. PSR 15.

1  Defendant arranged another meeting with CI and the firearms source. PSR 19. On March 16,
2  2021, the firearms source sold CI a 9mm "ghost gun," loaded with nine rounds of ammunition and a
3  Glock semi-automatic pistol, loaded with 33 rounds of ammunition. PSR 19-28. Defendant sold
4  approximately 50.7 grams of pure methamphetamine to CI for $600. PSR 25, 28. On March 25, 2021,
5  and May 20, 2021, Defendant sold two pistols and ammunition to CI. PSR 29-25.

6  On August 24, 2022, a two-count Information was filed charging Defendant with a violation of
7  21 U.S.C. §§ 841(a)(1) and (b)(1)(C) – Distribution of Methamphetamine (Count One), and 18 U.S.C. §
8  922(g)(1) – Felon in Possession of a Firearm (Count Two). PSR 2. On August 22, 2024, Defendant
9  pled guilty to both counts in the Information. PSR 4.

10  On September 9, 2024, the defendant appeared before the Court, for consideration for placement
11  into the CAP program. PSR 7. On October 8, 2024, the Court allowed Defendant to be admitted into
12  the San Jose CAP program. PSR 7.

**ARGUMENT**

**A.     The natures and circumstances of the offense and the Defendant's criminal history**

The nature and circumstances of the offenses are serious. Defendant distributed methamphetamine, a dangerous and addictive drug. The total quantity that Defendant distributed, approximately 104 grams of pure methamphetamine, was not a tremendous quantity, nevertheless "methamphetamine is a very serious drug that destroys many lives." *United States v. Arreola-Beltran*, 534 F. App'x 630, 633 (9th Cir. 2013). Even more troubling was the fact that Defendant brokered, possessed, and sold of multiple firearms.

Defendant's criminal history is quite extensive. He is the highest criminal history category, a category IV. It appears that one major reason that Defendant continued to recidivate was a strong addiction to methamphetamine. Defendant informed Probation that he previously used approximately two grams of methamphetamine at a time, which is a high amount.[1] Defendant's drug use should not excuse his conduct—indeed, "[d]rug or alcohol dependence or abuse ordinarily is not a reason for a

---

[1] It is the undersigned AUSA's experience that the typical user amount is one gram or less.

2

downward departure." U.S.S.G. §5H1.4. "Substance abuse is highly correlated to an increased propensity to commit crime." *Id*.

The "increased propensity to commit crime" is the Government's primary concern with respect to this defendant. He numerous felony convictions, mostly for vehicle theft. See PSR 68-81. Prior state court sentences appeared to not have deterred Defendant's criminal conduct. Defendant now faces an advisory Guidelines range of 130-162 months and a statutory maximum of 30 years (for Counts One and Two). PSR 139. However, for the reasons stated below, the Government believes that an alternative to incarceration may better serve the interests of justice.

### B.     The Government's recommendation

This is the first, and to date only, defendant that the undersigned AUSA has recommended for consideration into the CAP program. This is because the CAP program is an intensive program with limited space and resources. The Government is also aware that the Court is very selective of whom it admits into CAP. The Government thoroughly assessed Defendant before recommending him for acceptance into CAP. After approximately one year, it appears that Defendant has been successful in the CAP program.

According to Probation, Defendant has "consistently demonstrated a strong commitment to his recovery and personal growth." PSR 8. Defendant has shown this through actions—not words alone. The Government, as well as the courts, unfortunately often hear defendants make promises to remain off drugs and live a law-abiding life only to return to drugs and criminality in a relatively short amount of time.

Prior to his acceptance into CAP, Defendant was released on supervision on September 13, 2022. PSR 6. Since then, Defendant participated in substance abuse treatment, and at this own request, enrolled in mental health counseling services, and has never violated the conditions of his release. PSR 8. Equally important, Defendant sought and maintained employment. PSR 131-133. From February 22, 2023, until February 15, 2024, Defendant worked full-time at Restaurant Depot in San Jose. PSR 133. He was responsible for receiving supplies at the restaurant's fish department. PSR 133. Defendant left that position to move back to Salinas and worked at RAMCO from March 28, 2024, to May 1, 2024.

1  PSR 132. Since May 2024, he has been employed as a full-time forklift driver for an agricultural
2  company in Salinas. PSR 131.
3      Of course, post-conviction rehabilitation does not automatically entitle a defendant to a
4  downward variance. *See United States v. Diaz*, 735 F.App'x. 350, 351 (9th Cir. 2018) (unpublished)
5  (affirming a district court's sentence after "the court considered [a defendant's] positive post-sentencing
6  conduct and was simply unpersuaded that it warranted a sentence below 103 months."). However, the
7  Government submits that Defendant has not just demonstrated positive behavior post-conviction, but he
8  has demonstrated that he has abandoned a life of crime and drug use.
9      The Government believes this for numerous reasons. First, he has not used methamphetamine, a
10 highly addictive drug, for approximately three years. It is not uncommon to see a defendant struggle
11 with this and have instances of relapse. Defendant has never tested positive since his release from pre-
12 trial custody. He has also "worked to strengthen his relationship with his family." PSR 8. Having
13 family support is important because it helps people deal with adversity and remain out of trouble.
14 During his time in CAP, Defendant did face adversity, but did not return to his old life.
15     As stated above, drugs were likely a major contributing factor to his recidivism. But two key
16 issues, and perhaps the main issues, that are common among repeat offenders is a lack of responsibility
17 and candor. Defendant's candor and acceptance of responsibility were tested during his time in CAP,
18 but he did not fail. On Christmas Day in 2024, he was involved in a physical altercation with his
19 brother-in-law. PSR 8. But was forthcoming with the CAP team, accepted feedback, and recognized
20 the importance of avoiding high-risk situations. PSR 8.
21     He was involved in a car accident, but as Probation noted, "[u]nlike past interactions, the
22 defendant remained at the scene, cooperated with law enforcement, and provided accurate information
23 for the police report." PSR 8. This is further proof of Defendant's change. He has also demonstrated
24 responsibility by paying child support and taken measures, such as tattoo removal, to help him in the
25 future. PSR 8, 136. Furthermore, Defendant has not only demonstrated that he can live a law-abiding
26 life, but he now serves as a mentor to people in early recovery to help others find success. PSR 8.
27     In sum, the Government believes that Defendant has demonstrated a drastic change in his
28 behavior. He was successful in CAP, complied with his conditions of release, maintained employment,

4

has helped others, and has demonstrated responsibility. Accordingly, the Government submits that the Court should vary downwards from the advisory Guidelines and sentenced Defendant to time served.

## CONCLUSION

For the reasons stated above, the United States respectfully recommends that the Court sentence Defendant to time served, followed by the mandatory minimum of 3 years of supervised release. The Government does not recommend a fine in this case.

Dated: October 14, 2025

                                              Respectfully submitted,

                                              CRAIG H. MISSAKIAN
                                              United States Attorney

                                              /s Neal Hong
                                              NEAL C. HONG
                                              Assistant United States Attorney